UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

JOHN ANTHONY HAWKINS,               )
                                    )
                Plaintiff,          )
                                    )
        v.                          )     No. 1:26-cv-00692-JPH-MKK
                                    )
GEO GROUP (In the official capacity), et  )
al.,                                )
                                    )
                Defendants.         )

**ORDER SCREENING COMPLAINT, SEVERING CLAIMS,
AND DIRECTING FURTHER PROCEEDINGS**

Plaintiff John Hawkins-el[1] is a prisoner currently incarcerated at New Castle Correctional Facility ("New Castle"). He filed this civil action raising claims related to both excessive force and improper continued placement in segregation. Because the plaintiff is a "prisoner," this Court must screen the complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

**I. Screening Standard**

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020).

---

[1] The Court will direct the clerk to update Mr. Hawkins-el's name on the docket to reflect how he refers to himself in the complaint.

1

Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

## II. The Complaint

The Court accepts Mr. Hawkins-el's factual allegations as true at the pleading stage but not his legal conclusions. *See Iqbal*, 556 U.S. at 678 ("we must take all of the factual allegations in the complaint as true," but "we 'are not bound to accept as true a legal conclusion couched as a factual allegation'") (quoting *Twombly*, 550 U.S. at 555)). The complaint names as defendants (1) GEO Group (which operates New Castle); (2) Jeffrey Wrigley; (3) Bryan Vandervort; (4) Warden Mark Sevier; (5) Major Davis; (6) Mrs. Rutledge; (7) Assistant Warden Scott Fitch; (8) Correctional Officer Payne; (9) O.I.I. Privett; (10) O.I.I. Powell; (11) O.I.I. C. Foust; (12) J. Gallatin; (13) Lt. Larry Storms; and (14) M. Austin. Mr. Hawkins-el seeks damages, and injunctive relief in the form of being transferred to a different facility, being allowed to participate in the Recovery While Incarcerated ("RWI") program at New Castle, and for GEO Group to have to follow Indiana Department of Correction ("IDOC") policies and procedures.

On November 25, 2025, Mr. Hawkins-el was involved in a fight with other inmates in a New Castle recreation pod. Guards broke up the fight, in part by using mace. Mr. Hawkins-el was then placed in a shower stall in a segregation pod. Mr. Hawkins-el is epileptic. When Mr. Hawkins-el began showering, the hot water caused the mace to enter his bloodstream, which in turn caused him to have a seizure. While Mr. Hawkins-el was being removed from the shower during the seizure to be taken to medical, Officer Payne twisted Mr. Hawkins-el's leg with enough force to break his leg and/or knee. It is unclear that Mr. Hawkins-el's leg was actually broken, but it was swollen and extremely painful. Mr. Hawkins-el also was treated with Narcan "for some unknown reason." Dkt. 1 at 3. Mr. Hawkins-el submitted a grievance about this incident, but Grievance Specialist Rutledge failed to process it.

On November 26, Mr. Hawkins-el was placed in a restrictive housing unit ("RHU") for mental health observation, because of the fight and suspicion that he had been intoxicated at the time. On December 1, Mr. Hawkins-el pled guilty to non-defendant Officer Trimble for fighting but was not penalized with placement in segregation. On December 8, Mr. Hawkins-el pled guilty to Officer Trimble for the intoxication charge but again was not penalized with placement in segregation. Mr. Hawkins-el claims that "from here after," he was improperly retaliated against and denied due process with respect to having to remain in the RHU and not being sent back to his regular housing unit. *Id.* at 4.

Specifically on December 8, Mr. Gallatin, Lt. Storms, and Mr. Wrigley told Mr. Hawkins-el that he would remain in RHU on an administrative hold and

3

pending transfer to a different unit. Mr. Hawkins-el believed he was treated differently from other inmates who were in the same fight with him and who were sent back to their regular housing units or different prisons, and that Lt. Storms, Warden Sevier, Assistant Warden Fitch, Mr. Wrigley, and Major Davis were aware of this differential treatment. Mr. Hawkins-el received administrative reviews of his RHU placement every seven days, beginning on December 11, 2025, but he contends that these reviews were meaningless. He alleges that Mr. Gallatin "and the above-named defendants (some), and others, signed also for Hawkins-el prolong confinement without cause . . . ." *Id.*

On December 15, Lt. Storms "sent his crony c/o M. Austin" to Mr. Hawkins-el's cell to get his signature on a document that would request Mr. Hawkins-el's assignment to DWRHA.[2] Mr. Hawkins-el refused to sign it because he believed it did not conform with IDOC policy. Lt. Storms "then maliciously wrote Hawkins-el up on a Class-B conduct report" in connection with the document. *Id.* at 5. It is unclear how this conduct report was resolved.

That same day, Mr. Wrigley and Mr. Fitch submitted a request to IDOC central office that Mr. Hawkins-el be reassigned to DWRHA. On January 6, 2026, IDOC central office employee Frank Vanihel rejected the DWRHA request and stated that Mr. Hawkins-el should be returned to his regular unit. Mr. Wrigley, Mr. Fitch, Lt. Storms, Mr. Gallatin, Major Davis, and Warden Sevier all were aware of Mr. Vanihel's decision but left Mr. Hawkins-el in RHU while continuing

---

[2] The Court understands this acronym to mean that Mr. Hawkins-el would be assigned to restrictive housing or segregation on a department-wide basis within the IDOC.

to conduct 7-day reviews. In addition, one of Mr. Hawkins-el's family emailed non-defendants Tonya Woida and Lloyd Arnold, and Mr. VanDervort, Assistant Warden Fitch, Warden Sevier, and Major Davis about Mr. Hawkins-el's continued wrongful placement in RHU, but they took no action.

One reason Mr. Hawkins-el wanted to return to his regular housing unit was so he could participate in the RWI program. At the end of January, Lt. Storms informed Mr. Hawkins-el that he would not be returning to his regular housing unit and so Mr. Hawkins-el was prevented from participating in the RWI program.

On February 19, IDOC central office employee Dalton Haney granted Mr. Hawkins-el's classification appeal with regard to his RHU placement and found he should be returned to his regular housing unit. Still, Warden Sevier, Mr. Gallatin, Mr. Wrigley, Assistant Warden Fitch, and Lt. Storms did not remove Mr. Hawkins-el from RHU.

Also on February 19, an RWI counselor took a urine sample from Mr. Hawkins-el, which was negative and indicated he could begin participating in RWI. Mr. Hawkins-el believed he would be transferred to his old housing unit soon. However, on February 27, Lt. Storms sent Officer Austin to collect another urine sample from Mr. Hawkins-el, but Officer Austin wrote a false conduct report stating that Mr. Hawkins-el had refused the test. Mr. Hawkins-el later was found not guilty of this offense. And, on March 2, Mr. Hawkins-el learned from Lt. Storms that he "was all of a suddenly placed under investigation . . . ." *Id.* at 12.

As of the date Mr. Hawkins-el signed his complaint, March 30, he was still in RHU. Mr. Hawkins-el alleges generally that the Defendants are "on a 'witch hunt' against Hawkins-el, for exercising his due process rights and not to be treated differently, etc." *Id.* at 13. Although not entirely clear, Mr. Hawkins-el appears to accuse Lt. Storms and O.I.I. Officers Powell, Privett, Foust, "etc.," of reading GTL messages between Mr. Hawkins-el and his niece. *Id.* at 11. And, he claims that Lt. Storms interferes with the filing of grievances and appeals by inmates.

As for the conditions of confinement within RHU, Mr. Hawkins-el states that he has been deprived of his television; that he is only allowed showers three times a week instead of every day; that he is only provided recreation five times a week; that the number of items he can keep in his cell is limited; that the cells are cleaned only once a week; that he must be cuffed and shackled and led by a leash anytime he is outside his cell; and that he is surrounded by a lot of loud and mentally deficient inmates.

### III. Discussion and Severance of Claims

Mr. Hawkins-el's complaint alleges two sets of unrelated claims against different defendants: (1) that he was subjected to excessive force by Officer Payne when he twisted and injured Mr. Hawkins-el's leg; and (2) that the remaining defendants (not including Officer Payne) violated his due process rights and/or retaliated against him in relation to his continued placement in RHU. These claims belong in different lawsuits. *See Owens v. Godinez*, 860 F.3d 434, 436 (7th Cir. 2017); *see also Antoine v. Ramos*, 497 F. App'x 631, 635 (7th Cir. 2012)

(stating "district court should have rejected [plaintiff's] attempt to sue 20 defendants in a single lawsuit raising claims unique to some but not all of them") (citing *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 683 (7th Cir. 2012)); *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Rule 18(a) of the Federal Rules of Civil Procedure provides that "[a] party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Joinder of the defendants into one action is proper only "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). In short, the courts do not allow an inmate to treat a single federal complaint as a sort of general list of grievances. *Mitchell v. Kallas*, 895 F.3d 492, 502–03 (7th Cir. 2018) ("Out of concern about unwieldy litigation and attempts to circumvent the [Prison Litigation Reform Act's] PLRA's fee requirements, we have urged district courts and defendants to beware of 'scattershot' pleading strategies.").

Moreover, a district court may "sever any claims that are 'discrete and separate' in the interest of judicial economy and to avoid prejudice." *Vermillion v. Levenhagen*, 604 F. App'x 508, 513 (7th Cir. 2015) (citing *Gaffney v. Riverboat Servs. of Indiana., Inc.*, 451 F.3d 424 442 (7th Cir. 2006)). To be "discrete and

separate ..., one claim must be capable of resolution despite the outcome of the other claim." *Gaffney*, 451 F.3d at 442 (internal quotation marks omitted). That is the case here.

The Court notes that 13 of the 14 pages of the factual allegations in the complaint relate solely to the segregation issue, and that the "Relief Wanted" section of the complaint also does not seem to clearly indicate whether Mr. Hawkins-el wants to pursue an excessive force claim. In any event, the segregation issue is clearly the focus of the complaint. The Court will address and screen those claims in this case. Any claims regarding Officer Payne's use of force will be severed into a new action, if Mr. Hawkins-el so chooses, as discussed below.

### A. Segregation Claims

First, any Fourteenth Amendment due process claims regarding Mr. Hawkins-el's continued placement in RHU **are dismissed**. Prisoners do not have a liberty interest in avoiding transfer from the general prison population to discretionary segregation, and even "extremely harsh prison conditions" may not create a liberty interest. *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008). When determining whether an inmate's liberty interests are sufficiently impacted by a placement in segregation as to require due process protections, courts must "consider both 'the duration of the segregative confinement *and* the conditions endured." *Jackson v. Anastasio*, 150 F.4th 851, 859 (7th Cir. 2025) (quoting *Marion v. Columbia Correctional Institution*, 559 F.3d 693, 699 (7th Cir. 2009)). "It is important to emphasize that the significance of unusually appalling

physical conditions diminishes when courts confront prolonged terms of segregation." *Id.* But it is also clear in this Circuit that up to six months in segregation (and possibly longer) is not enough, standing alone, to trigger due process rights. *Id.* at 860 (citing *Marion*, 559 F.3d at 698). Mr. Hawkins-el's approximately four months in RHU, as of the date he signed his complaint, is not enough by itself to implicate due process requirements.

Therefore, Mr. Hawkins-el's complaint must identify sufficiently egregious conditions of confinement in RHU, amounting to "'an atypical or significant hardship in relation to the ordinary incidents of prison life," in order to state a due process claim. *Id.* (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). "When considering a prisoner's liberty interest in avoiding conditions of segregation, [courts] have distinguished between allegations of 'disgusting conditions' versus conditions that 'although restrictive, were not unsanitary or otherwise disgusting.'" *Id.* (citing *Kervin v. Barnes*, 787 F.3d 833, 835-36 (7th Cir. 2015)).

The conditions Mr. Hawkins-el describes are essentially conditions that could reasonably be expected in any prison segregated housing unit. Simply put, conditions in segregation are almost always harsher than conditions in a non-segregated unit, but caselaw is clear that mere placement in segregation does not automatically trigger due process protections. He does not allege "disgusting" conditions in RHU. The conditions he alleges seem comparable to, or even less severe, than cases where the Seventh Circuit has found that an inmate's due process rights were not implicated. For instance, in *Hardaway v. Meyerhoff*, 734

9

F.3d 740, 744-45 (7th Cir. 2013), the inmate spent six months and one day in a cell with a confrontational cellmate, with only once-a-week access to showers and the prison yard. Mr. Hawkins-el has had considerably more out-of-cell time for both recreation and showering and did not have to be celled with a confrontational inmate. Mr. Hawkins-el seems most concerned about not being able to have his television set in his RHU cell. But it is well settled that prisoners have no constitutional right to a television set. *See James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992).

The conditions described by Mr. Hawkins-el are not comparable to the conditions described in *Jackson*. There, the court determined that the inmate had due process rights related to his continued placement in solitary confinement for three months. *Jackson*, 150 F.4th at 860. Importantly, there were allegations and evidence that the segregation cells "had feces and urine on the walls, constant noise with inmates banging on cell doors, water contaminated with bacteria that causes Legionnaire's disease, and roaches and mice. He also testified that inmates in the disciplinary segregation cells, unlike inmates in general population, throw feces and urine at other inmates." *Id.* Mr. Hawkins-el's complaint describes conditions that are more comparable to the facts in *Hardaway*. The Court concludes that Mr. Hawkins-el has not adequately stated a claim that the conditions he was facing during his 4-month stay in segregation triggered due process protections.

Mr. Hawkins-el also states that the defendants retaliated against him. To state a First Amendment retaliation claim, Mr. Hawkins-el must allege that: (1)

he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity; and (3) the protected activity he engaged in was at least a motivating factor for the retaliatory action. *Archer v. Chisholm*, 870 F.3d 603, 618 (7th Cir. 2017) (citing *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). "[T]he prisoner must allege a chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988). *See also Santiago v. Anderson*, 496 F. App'x 630, 633 (7th Cir. 2012) (stating that inmate's claim "that every ill befalling him must be retaliatory because everyone knows him to be litigious and a frequent correspondent with the grievance officer—falls short of stating a claim even under notice pleading"); *Benson v. Cady*, 761 F.2d 335, 342 (7th Cir. 1985) (noting that "alleging merely the ultimate fact of retaliation is insufficient"). Mr. Hawkins-el's complaint only contains vague assertions that "every ill befalling him must be retaliatory because everyone knows him to be litigious and a frequent correspondent with the grievance officer." This is not enough to state a First Amendment retaliation claim and any such claims **are dismissed**.

Further, Mr. Hawkins-el alleges he was treated differently than other inmates who were involved with and disciplined for the November 25 fight. To the extent Mr. Hawkins-el asserts that his Fourteenth Amendment equal protection rights were violated, he must allege that (1) he was a member of a protected class, (2) he was treated differently from a similarly situated member of an unprotected class, and (3) the defendants were motivated by a

11

discriminatory purpose. *Alston v. City of Madison*, 853 F.3d 901, 906 (7th Cir. 2017). Simply receiving different or unfair treatment is not enough to raise an equal protection violation. *Sherwin Manor Nursing Ctr. v. McAuliffe*, 37 F.3d 1216, 1220 (7th Cir. 1994); *Huebschen v. Department of Health & Soc. Servs.*, 716 F.2d 1167, 1171 (7th Cir.1983). Mr. Hawkins-el has failed to allege that he was treated unfairly because of his membership in a particular class and therefore does not allege a viable equal protection claim, and any such claims **are dismissed**.

To the extent Mr. Hawkins-el alleges something improper took place with respect to the monitoring of his communications with an outside family member, he does not state any constitutional claim. Particularly as to outside communication with non-lawyers, security concerns in prisons and jails justify monitoring of such communications. *Martin v. Tyson*, 845 F.2d 1451, 1458 (7th Cir. 1988). Any claims related to the monitoring of Mr. Hawkins-el's communications **are dismissed**.

Mr. Hawkins-el also alleges that Lt. Storms and Officer Austin filed or helped file false conduct reports against him. But fraudulent conduct in the context of a prison discipline hearing is not a violation of due process. *Lagerstrom v. Kingston*, 463 F.3d 621, 625 (7th Cir. 2019). Instead, the prisoner receives "protection from such arbitrary action . . . in the procedures mandated by due process," including the right to advance notice, exculpatory evidence, an impartial decisionmaker, and written findings. *Id.*; *see also Hanrahan v. Lane*, 747 F.2d 1137, 1141 (7th Cir. 1984) ("We find that an allegation that a prison

guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided."). There are insufficient allegations that Mr. Hawkins-el was deprived of due process in connection with the resolution of these allegedly false conduct reports; indeed, he was found not guilty of at least one of them. Any claims related to the alleged filing of false conduct reports **are dismissed**.

Finally, Mr. Hawkins-el contends that the defendants regularly and repeatedly violated IDOC rules, regulations, and procedures regarding placement of inmates in segregation. "[42 U.S.C. §] 1983 protects against constitutional violations, not violations of departmental regulation and practices." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (cleaned up). Failure to strictly follow IDOC procedural and protocols related to segregation does not state an actionable claim so any such claims **are dismissed.**

Because the Court has been unable to identify a viable claim for relief against any particular defendant with respect to Mr. Hawkins-el's segregation claims, the complaint is subject to dismissal.

### B. Opportunity to File an Amended Complaint

The dismissal of the complaint will not in this instance lead to the dismissal of the action at present. "The usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). In the interest of justice, the Court will allow the plaintiff to

amend his complaint if, after reviewing this Court's order, he believes that he can state a viable claim for relief, consistent with the allegations he has already made. *See Tate v. SCR Med. Transp.*, 809 F.3d 343, 346 (7th Cir. 2015) ("We've often said that before dismissing a case under 28 U.S.C. § 1915(e)(2)(B)(ii) a judge should give the litigant, especially a pro se litigant, an opportunity to amend his complaint."); *Luevano v. Wal-Mart*, 722 F.3d 1014 (7th Cir. 2013).

The plaintiff shall have **through June 26, 2026, to file an amended complaint**.

The amended complaint must (a) contain a short and plain statement of the claim showing that the plaintiff is entitled to relief, which is sufficient to provide the defendant with fair notice of the claim and its basis; (b) include a demand for the relief sought; and (c) identify what injury he claims to have suffered and what persons are responsible for each such injury. The **clerk is directed** to include a copy of the prisoner civil rights complaint form along with the plaintiff's copy of this Order, which he must use if he files an amended complaint. *See* Local Rule 8-1 (requiring pro se plaintiffs to use the clerk-provided form for claims under 42 U.S.C. § 1983).

Any amended complaint should have the proper case number, 1:26-cv-00692-JPH-MKK, and the words "Amended Complaint" on the first page. The amended complaint will completely replace the original. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017) ("For pleading purposes, once an amended complaint is filed, the original complaint drops out of the picture."). Therefore, it

14

must set out every defendant, claim, and factual allegation the plaintiff wishes to pursue in this action.

If the plaintiff files an amended complaint, it will be screened pursuant to 28 U.S.C. § 1915A(b). If no amended complaint is filed, this action will be dismissed without further notice or opportunity to show cause.

### C. Excessive Force Claim

Mr. Hawkins-el's excessive force claim is misjoined because it involves a different event and a different defendant than those presented in the claim related to being housed in the RHU. In such a situation, "[t]he court may . . . sever any claim against a party." Fed. R. Civ. P. 21. The misjoined claim shall either be severed into a new action or dismissed without prejudice. *See Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000). Mr. Hawkins-el is the master of his complaint and shall be given the opportunity to determine which course is followed. *Myles v. United States*, 416 F.3d 551, 552 (7th Cir. 2005) (noting that the composition and content of the complaint are entirely the responsibility of the plaintiff, for "even pro se litigants are masters of their own complaints and may choose who to sue-or not to sue"). If a new action is opened, Mr. Hawkins-el will be responsible for the filing fee associated with the new case. In addition, the screening requirement of 28 U.S.C. § 1915A(b) will be triggered for the new case. As always, Mr. Hawkins-el should carefully consider whether to pursue any particular civil action. Mr. Hawkins-el shall have through **June 26, 2026**, in which to notify the Court whether he wishes the Court to sever the excessive

force into a new action. If Mr. Hawkins-el fails to so notify the Court, this claim will be considered abandoned and will be dismissed without prejudice.

Alternatively, Mr. Hawkins-el may elect to file an amended complaint in this action that only raises the excessive force claim. If he does so, and still wishes to pursue claims related to segregation, he will need to file a new complaint to open a new cause of action related to those claims.

The **clerk is directed** to change the last name of the plaintiff on the docket, from "Hawkins" to "Hawkins-el."

**SO ORDERED.**

Date: 5/27/2026

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

JOHN ANTHONY HAWKINS
956724
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

16